UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH ACCARDO,

                        Plaintiffs,

          - against -

EQUIFAX, INC., TRANSUNION, LLC,
SYNCHRONY FINANCIAL and LENDING
CLUB,

                       Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 18-5030 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I. PRELIMINARY STATEMENT

Plaintiff Joseph Accardo ("Plaintiff" or "Accardo") commenced this action against Equifax, Inc. ("Equifax"), Transunion, LLC ("Transunion"), Synchrony Financial ("Synchrony"), and Lending Club (collectively, "Defendants") on September 5, 2018, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. The asserted violations involve Synchrony and Lending Club loans obtained in Plaintiff's name (the "Subject Loans") which became delinquent and were reported on Plaintiff's credit profile. *See generally* Compl. [DE 1]. Plaintiff alleges, *inter alia*, that: (1) the Subject Loans were obtained as a result of identity theft; (2) Lending Club and Synchrony negligently, recklessly, and knowingly reported erroneous credit information by reporting the Subject Loans on Plaintiff's credit profile; and (3) Equifax and Transunion negligently and recklessly disseminated false information concerning Plaintiff's credit profile by reporting and verifying the Subject Loans. *See* Compl.

¶¶ 2-3.[1]

Before the Court at this time are: (1) Plaintiff's motion to amend the Complaint and (2) Lending Club's motion to compel arbitration and to stay the proceedings pending completion of arbitration. *See* Plaintiff's Motion to Amend ("Pl.'s Mot.") [DE 38]; Defendant's Notice of Motion to Compel Arbitration [DE 41]; Defendant's Memorandum of Law in Support of Motion to Compel Arbitration ("Def.'s Mem.") [DE 42]. Judge Seybert referred the motions to this Court for a report and recommendation as to whether the motions should be granted. *See* April 9, 2019 Electronic Order Referring Motions. For the reasons which follow, the Court respectfully recommends to Judge Seybert that: (1) Lending Club's motion to compel arbitration be DENIED and that the case proceed to a summary trial; (2) the parties meet and confer and submit to the Court, within 14 days, a proposed discovery schedule; and (3) Plaintiff's motion to amend be DENIED at this time, without prejudice.

## II.   BACKGROUND

### A.   Facts Asserted in the Complaint

The Court's summary of the relevant facts taken from the Complaint are for purposes of this motion only. The summary does not constitute findings of fact. Rather, the Court assumes these facts to be true for purposes of deciding the instant motion to amend.

Plaintiff alleges that in or about February of 2018, he noticed that Lending Club and Synchrony were reporting the Subject Loans to consumer reporting agencies, including Equifax and Transunion. *See* Compl. ¶ 15. Plaintiff disputed this erroneous information with the credit

---

[1] At present, Lending Club and Equifax are effectively the only defendants remaining in this action since Transunion settled with the Plaintiff and Synchrony and Plaintiff have agreed to a settlement in principle. *See infra* Part B.

bureaus on numerous occasions. *Id*. ¶ 16. By way of example, on March 9, 2018, Plaintiff "mailed dispute letters to Equifax stating emphatically that he never had an account with Lending Club or Synchrony." *Id*. ¶ 17 and Ex. A. He sent a similar letter to Transunion that same day. *Id*. ¶ 22 and Ex. F. Plaintiff also disputed the account by contacting Lending Club directly. *Id*. ¶ 18 and Ex. B. Notwithstanding his letters, Plaintiff states that Equifax, Lending Club, and Synchrony continued to verify and report inaccurate trade lines on his credit report, thereby causing him harm. *Id*. ¶ 19 and Ex. C. After Plaintiff again disputed the Lending Club trade line with Equifax, he received a letter from Equifax dated May 9, 2018 stating that Equifax "will not be conducting a further review of the file." *Id*. ¶ 21 and Ex. E. Transunion also continued to report and verify the Synchrony Bank trade line. *Id*. ¶ 23 and Ex. G.

Plaintiff maintains that Defendants' "failure to remove clearly inaccurate information is evidence of their failure to conduct a reasonable investigation upon receipt of Plaintiff's multiple disputes." *Id*. ¶ 24. As a result, Defendants have caused Plaintiff harm, including "great distress, annoyance and frustration in his daily life." *Id*. ¶ 27.

**B.    Procedural Posture**

Plaintiff commenced this action by filing his Complaint on September 5, 2018 asserting one cause of action under the FCRA against each of the four Defendants for failure to reasonably investigate the Subject Loans and failure to report and verify the Subject Loans despite numerous disputes submitted by Plaintiff. *Id*. ¶¶ 28-43. The Defendants each filed their respective Answers between October 1 and December 17, 2018. *See generally* DE 11-DE 30. The Initial Conference before this Court was held on January 14, 2019, at which time: (1) the Court implemented the Initial Case Management and Scheduling Order and (2) Plaintiff advised that he wished to amend the Complaint to assert a class claim against Lending Club. *See* January 14,

2019 Civil Conference Minute Order [DE 33].  The Court issued a briefing schedule which directed Plaintiff to file his motion to amend on or before February 15, 2019.  Plaintiff did so. *See id.*; Pl.'s Mot.  On March 25, 2019, Lending Club moved to compel arbitration and to stay the proceedings pending the outcome of the arbitration.  *See* DE 41.  Judge Seybert referred Plaintiff's motion to amend to this Court for decision and also referred Lending Club's motion to compel arbitration for a report and recommendation.  *See* April 9, 2019 Electronic Order Referring Motions.

On January 31, 2019, Plaintiff and Transunion filed a Stipulation of Dismissal, with prejudice, as to Transunion only, which Judge Seybert "so ordered" on February 5, 2019.  *See* Stipulation of Dismissal with Prejudice [DE 35]; Order Dismissing Transunion [DE 37].  On May 6, 2019, Plaintiff filed a letter advising Judge Seybert that Plaintiff and Synchrony had reached a settlement in principle.  *See* Synchrony Notice of Settlement [DE 57].  According to Judge Seybert's most recent Electronic Scheduling Order, Plaintiff and Synchrony were required to file a Stipulation of Dismissal or a Status Report by July 8, 2019.  *See* June 7, 2019 Electronic Order.  To date, neither the Stipulation nor a Status Report has been filed on ECF.

**III.     Discussion**

    **A.     Motion to Compel Arbitration**

        **a.     *Lending Club's Opening Brief***

By way of background, Lending Club states that it is an online marketplace connecting borrowers and investors and that borrowers may use Lending Club's platform to apply for and obtain personal loans underwritten and issued by a third-party bank (WebBank) and serviced by Lending Club.  *See* Def.'s Mem. at 2.  According to Lending Club, Plaintiff's claim against it here arises from one such loan obtained by Plaintiff in February 2015 (the "Loan").  *See id.*  To

4

obtain the Loan, Plaintiff entered into both a Borrower Membership Agreement with Lending Club and a Loan Agreement with WebBank (collectively, the "Agreements"), both of which contained a substantially similar arbitration provision (the "Arbitration Provision").  *See id.; see also* March 25, 2019 Declaration of William Hines, Senior Manager, Customer Service, in Support of Motion to Compel Arbitration ("Hines Decl.") [DE 43] ¶¶ 3-8  (explaining the origination of the Loan and setting forth the Arbitration Provision and Plaintiff's assent to it) and Ex. 1-A ("Borrower Membership Agreement") and 1-B ("Loan Agreement").

Lending Club maintains that Plaintiff expressly agreed, by way of the Arbitration Provision, "that Lending Club may opt to arbitrate, in binding arbitration, a broad range of disputes between the parties including, without limitation, disputes 'relating to . . . the activities . . . that involve, lead to, or result from' the agreement, loan or relationship with Lending Club." Def.'s Mem. at 3 (quoting the Borrower membership Agreement); Hines Decl., Ex. 1-A. According to Lending Club, since Plaintiff's claim arises out of Lending Club's alleged refusal to conduct a reasonable investigation into Plaintiff's dispute regarding the trade line on his Loan — which relates to both Lending Club and Plaintiff's relationship *and* the Loan — Plaintiff's claim against Lending Club falls within the scope of the Arbitration Provision. *Id.* at 10-11. Among other things, Lending Club underscores that (1) "Plaintiff had the opportunity to review" the Agreements before agreeing to their terms by checking a box or clicking a button during the online loan application process; (2) Plaintiff indicated his assent to the Agreements by "checking a box or clicking a button" agreeing to their terms; (3) "all information set forth in Lending Club's system shows Plaintiff's name as associated with the Loan at issue; and (4) Plaintiff had 30 days to opt out of the Arbitration Provision and did not do so. *Id.* at 2, 4; Hines Decl. ¶¶ 3-8;

5

*see also* Def.'s Mem. at 7-8 (collecting cases in which courts have compelled arbitration where a clickwrap agreement contained an arbitration provision).

The Hines Declaration also asserts as follows:

> 6.      As noted above, in order to complete the loan application flow and obtain a loan through LendingClub's platform, Plaintiff had to check the box or click a button indicating his acceptance to the Loan Agreement and the Borrower Membership Agreement. If he declined to check the box or click the online button, he would not have been permitted to move to the next screen of the application process on LendingClub's online platform, would not have been able to complete the loan application and would not have obtained the -4309 loan.

Hines Decl. ¶ 6. Hines also states that Lending Club's regularly-kept electronic business records show that Plaintiff accepted the Borrower Membership Agreement and Loan Agreement for the -4309 loan on February 4, 2015 and that "[a]ll information set forth in Lending Club's system shows Plaintiff's name as associated with the -4309 loan." *Id.* ¶ 7.

Lending Club asserts that although it elected to proceed with binding arbitration of Plaintiff's claim under the Arbitration Provision, Plaintiff rejected Lending Club's election. Def.'s Mem. at 4; *see* Declaration of Justin Lamson, Esq. in Support of Motion to Compel Arbitration ("Lamson Decl.") [DE 44] ¶¶ 2-3. Therefore, Lending Club filed the instant motion to compel arbitration, asserting that Plaintiff's claim is subject to the Arbitration Provision. *See* Def.'s Mem. at 1. Lending Club argues that under the "liberal federal policy favoring arbitration" which the FAA promotes, the Court should compel arbitration in view of the existence of the Arbitration Provision, which is a valid and enforceable written arbitration agreement among and between Plaintiff and Lending Club. *Id.* at 4, 6-10.

To the extent Plaintiff claims he is not bound by the Arbitration Provision because the Loan was obtained as a result of identity theft, Lending Club maintains that it is Plaintiff's burden to establish this fact by proffering supporting evidence. *Id.* at 9-10. Lending Club contends that Plaintiff cannot do so here. *Id.* According to Lending Club, "the law is clear that,

6

after the party seeking to compel arbitration makes a prima facie showing that an agreement to arbitrate existed . . . the burden shifts to the party opposing arbitration to put the making of that agreement in issue." *Id.* at 9 (internal quotation marks and citation omitted). If the Court concludes that there is a dispute as to whether Plaintiff is bound by the arbitration agreement, Lending Club asserts that Section 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), requires the Court to proceed summarily to a trial solely on that question before the case can proceed any further. *Id.* at 10.

Finally, Lending Club argues that the action should be stayed pending completion of arbitration under § 3 of the FAA which provides that where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." *Id.* at 12 (quoting 9 U.S.C. § 3).

### b.   *Plaintiff's Opposition*

Plaintiff argues that Lending Club's sole basis to compel arbitration — that the Loan is governed by an arbitration agreement — is "blatantly frivolous" since the Loan was obtained as a result of identify theft. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration ("Pl.'s Opp'n") [DE 47] at 1. As such, Plaintiff asserts that he cannot be bound by an arbitration agreement that he never signed with respect to an account that he never opened. Pl.'s Opp'n at 1. Plaintiff points out that Lending Club merely submits a conclusory employee declaration in support of its motion. *See generally*, Hines Decl. That Declaration asserts that Plaintiff signed up for the Loan and therefore was confronted with Lending Club's adhesive clickwrap agreement notifying Plaintiff that he was agreeing to arbitration, devoid of any identifying information to demonstrate the basis of the employee's knowledge. *See id.*

7

In support of his opposition, Plaintiff Accardo has submitted an affidavit in which he avers that: (1) he never had a Lending Club or WebBank account; (2) he never signed any contract or agreement with Lending Club or WebBank; (3) the Loan was opened as a result of identity theft; and (4) as soon as he became aware of the Loan, he immediately filed a Police Report and notified Lending Club. *See* March 28, 2019 Affidavit of Joseph Accardo ("Accardo Aff.") [DE 47-1].

Plaintiff maintains that Lending Club cannot meet its initial burden of establishing that a valid arbitration agreement governs Plaintiff's claim against Lending Club. Pl.'s Opp'n at 3. Accardo adds that simply claiming that *someone* opened an account online, using his name, and agreed to the Arbitration Provision is not enough. *Id.* at 3. According to Plaintiff, Lending Club has done nothing to demonstrate that *Plaintiff* opened the Loan and consequently Plaintiff should not be bound by the Arbitration Provision. *Id.* Plaintiff relies on *Maranto v. Citifinancial Retail Servs.*, No. CIV.A. 05-359, 2005 WL 3369948 (W.D.La. Nov. 18, 2005), a case with similar facts. In *Maranto*, the court held that the defendant's motion to compel arbitration failed in the first instance since the defendant offered no evidence that the plaintiff applied for the credit card underlying the account at issue or consented to the opening of the account. *Maranto*, 2005 WL 3369948, at *2. In further support, Plaintiff cites *Hudson v. Babilonia*, No. 3:14-CV-01646, 2015 WL 1780879, at *3 (D. Conn. Apr. 20, 2015) where the court ordered that the matter proceed to a summary trial on the issue of whether the plaintiff had ever agreed to arbitration. *See* Pl.'s Opp'n at 4. According to Plaintiff, the party moving to compel arbitration in *Hudson*, unlike Lending Club here, submitted evidence in support of its contention that a binding arbitration agreement between the parties existed. That evidence included documents purportedly signed by the plaintiff and communications with the plaintiff. *Hudson*, 2015 WL

8

1780879 at *2.  Here, Plaintiff argues that since Lending Club has not made even a basic showing that Plaintiff ever agreed to the Arbitration Provision, a summary trial on the Arbitration Provision is not warranted.  *See* Pl.'s Opp'n at 5.

        c.      ***Lending Club's Reply***

In its Reply brief, Lending Club argues there can be no question that it has made its prima facie showing that a valid arbitration agreement exists since it submitted a declaration attesting, *inter alia*, that:  (1) the Loan documents and terms were validly agreed upon by electronic signature, and (2) all information set forth in Lending Club's system shows Plaintiff's name associated with the Loan.  *See* Reply Memorandum in Further Support of Defendant's Motion to Compel Arbitration ("Def.'s Reply Mem.") at 1 (citing *Perez v. Ruby Tuesday Inc.*, No. 6:16-CV-795, 2019 WL 355637, at *4 (N.D.N.Y. Jan 28, 2019) ("defendants have carried their burden of demonstrating that the parties agreed to arbitrate pursuant to the Agreement, a copy of which was electronically signed by [the plaintiff]," notwithstanding the plaintiff's claim that she did not sign the arbitration agreement or otherwise assent to the agreement)).

Notwithstanding that position, Lending Club has submitted an additional declaration -- from Lending Club employee Kevin Cline, Supervisor of Fraud Investigations – stating that "[i]n the case of [Plaintiff's] claim, based on the information that was available to me, the facts, viewed collectively, did not support a conclusion that this case truly involved identity theft." April 8, 2019 Declaration of Kevin Cline in Support of Motion to Compel Arbitration ("Cline Decl.") [DE 50] ¶ 3.  Among other things, Cline highlights the following "red flags" in support of his conclusion:  (1) at the time of the application for the Loan, the applicant (i) submitted Plaintiff's most recent Form W-2 and paystubs, (ii) submitted Plaintiff's most recent address, and (iii) participated in a verification phone call; (2) the Loan had a consistent history of

9

payments for approximately one year after origination; (3) Plaintiff did not make his identity theft claim until more than three years after origination; (4) Lending Club received multiple post-default communications from the borrower, requesting, for example, additional time to submit monthly payments; (5) despite the fact that Plaintiff reported a five-year long fraudulent scheme according to which no less than seven accounts were opened in his name -- including the Loan at issue -- Plaintiff expressly declined police assistance in investigating or prosecuting the alleged fraudulent scheme; and (6) Plaintiff refused to participate in a phone conversation with a Lending Club investigator regarding alleged identity theft in connection with the Loan and further refused to complete (and have notarized) Lending Club's identity theft affidavit.  *Id.* ¶¶ 4-12.

Lending Club distinguishes *Maranto* and argues that *Hudson* actually supports Lending Club's position.  With respect to *Maranto*, Lending Club points out that, unlike Lending Club here, the defendant [moving to compel arbitration] in *Maranto* did not present *any* evidence that the plaintiff actually entered into the relevant agreement.  *See* Def.'s Reply at 5-6 (citing *Maranto*, 2005 WL 3369948 at *4 ("there [was] no evidence before the court that Plaintiff applied for the card or consented to the opening of the account.")).  Lending Club argues that *Hudson* supports its position because the court there ordered a trial on the issue of whether an arbitration agreement was formed where the party moving to compel arbitration, like Lending Club here, "supported their motion [] with documents purportedly signed by [the plaintiff] and evidence of other communications purportedly made to and by [the plaintiff]."  *See* Def.'s Reply Mem. at 6 (citing *Hudson* 2015 WL 1780879 at * 4-5).

Further, Lending Club claims that Plaintiff's self-serving affidavit denying the existence of an arbitration agreement is insufficient to create an issue of fact requiring a trial since the

10

Second Circuit has explained that "a party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in order to precipitate the trial contemplated by 9 U.S.C.S. § 4." Def.'s Reply Mem. at 7 (citing *DuBois v. Macy's East, Inc.*, 338 Fed. App'x. 32, 33 (2d Cir. Jul. 9, 2009); *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1103 (2d Cir.1987). According to Lending Club, Plaintiff has offered nothing more than insufficient and self-serving denials. *Id.*

On April 9, 2019, Plaintiff filed a letter asking the Court not to consider the Cline Declaration submitted with Lending Club's reply because the declarations contain facts not found or raised in Lending Club's opening brief. *See* Letter Regarding the Submission of New Facts [DE 51]. Plaintiff argues that without an opportunity to respond, Plaintiff would be prejudiced by the submission of this belated information and documents which form the basis of the reply brief. *See id.* Lending Club responded by letter on April 15, 2019, noting among other things the proposition that courts may consider arguments and evidence raised for the first time on reply when they are directly in response to arguments and evidence submitted for the first time as part of an opposition brief. *See* April 15, 2019 Lending Club Letter [DE 54] (citing *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000)). The Court finds that: (1) the Cline Declaration responds directly to Plaintiff's opposition brief and the Accardo Affidavit; (2) Lending Club did not know for certain what arguments Plaintiff would advance in opposition to Lending Club's motion until Plaintiff submitted the Accardo Affidavit; and (3) with broad discretion to consider arguments made for the first time in a reply brief, and observing that the Cline Declaration goes to the merits of the identity theft issue, the Court will consider the Cline Declaration.

11

### b. Legal Standard

The FAA establishes a "federal policy favoring arbitration," according to which federal courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). A written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a party may move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "In the context of motions to compel arbitration brought under the FAA [], the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat,* 316 F.3d 171, 175 (2d Cir.2003). As such, courts must "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). All reasonable inferences must be drawn in favor of the non-moving party. *Nicosia*, 834 F.3d at 229.

Before compelling arbitration, a "district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 365 (2d Cir. 2003). Under the FAA, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary. 9 U.S.C. § 4." *Id.* "To establish a genuine issue entitling a party to a jury trial, an unequivocal denial that the agreement [to arbitrate] had been made [is]

12

needed, and some evidence should [be] produced to substantiate the denial." *Doctor's Associates, Inc. v. Jabush,* 89 F.3d 109, 114 (2d Cir.1996) (quotation marks omitted; alterations in original).

"In a typical motion to compel arbitration . . . some discovery may be allowable or necessary." *Moss v. BMO Harris Bank, N.A.,* No. 13–CV–05438, 2014 WL 2565824, at *2 (E.D.N.Y. June 9, 2014) (quoting *Lismore v. Societe Generale Energy Corp.,* No. 11–CV–06705, 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012); *see also Alvarez v. T–Mobile USA, Inc.,* 822 F. Supp. 2d 1081, 1085 (E.D. Cal. 2011) ("With respect to the first threshold issue, formation of an agreement, Alvarez is entitled to discovery . . . . According to Alvarez, he did not sign the agreement . . . . Discovery is appropriate for this allegation."). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000).

### c. Analysis

With respect to the first threshold issue — whether the parties entered into a contractually valid arbitration agreement — there is obvious disagreement between Plaintiff and Lending Club. Lending Club asserts that it has made a prima facie showing that a valid arbitration agreement exists, offering the Agreements as well as the Hines Declaration which provides an explanation of the Loan's origination and Plaintiff's purported assent to the Arbitration Provision. *See generally* Hines Decl. Further, to the extent Plaintiff contends the Loan was obtained through identity theft, Lending Club maintains that the facts and circumstances underlying the Loan suggest otherwise. Lending Club provides the Cline Declaration, citing and describing numerous "red flags" which Lending Club argues are indications that Plaintiff applied for the Loan. *See generally* Cline Decl.

13

On the other hand, Plaintiff unequivocally denies that he had an account or signed any contract with Lending Club or WebBank. *See* Accardo Aff. ¶¶ 2-3. Indeed, Plaintiff contends that to the extent Lending Club believes Plaintiff opened a Lending Club account [the Loan], that account was the result of identify theft. *Id.* ¶ 4. In support of his identity theft contention, Plaintiff states that as soon as he became aware of the Loan, he immediately filed a Police Report with the Freeport Police Department and notified Lending Club — completing and submitting the FTC's Identity Theft Report. *Id.* ¶¶5-6.[2]

Taking all of this information into account, there is clearly a dispute about whether an arbitration agreement exists between Plaintiff and Lending Club and whether Plaintiff [and not an identity thief] signed the Agreements and is therefore bound to the Arbitration Provision. Significantly, and unlike the defendant in *Maranto*, Lending Club has supported its motion with documents purportedly signed by Plaintiff as well as other evidence that Plaintiff applied for the Loan, including the "red flags" set forth in the Cline Declaration. *See* Cline Decl. Although the Accardo Affidavit is one page in length and contains no exhibits, it offers facts which give rise to an actual dispute on the issue of whether Plaintiff signed the Agreements and is bound by the Arbitration Provision. *See generally* Accardo Aff. Although Plaintiff does not attach supporting documentation to his Affidavit, he does reference the Police Report submitted in connection with his identity theft claim which appears throughout the attachments to the Initial Complaint. Moreover, the Court points out that Lending Club's own submissions contain communications from Plaintiff to Lending Club in which Plaintiff asserts that the Loan was the result of identity

---

[2]    The Court notes that a March 9, 2018 letter from Plaintiff to Lending Club concerning the Loan and Plaintiff's identity theft contention is attached to the Initial Complaint, along with a series of communications with the Defendants concerning the Loan and Plaintiff's identity theft claim, which the Court has reviewed in connection with the instant motion. *See* DE 1-3.

14

theft — confirming the actual dispute between Plaintiff and Lending Club.  *See* Cline Decl. Ex. A.  Based on the record before the Court, a reasonable fact-finder could conclude that Plaintiff was the victim of identity theft and therefore did not enter into the Agreements [containing the Arbitration Provision] with Lending Club.

*Hudson* is particularly instructive here.  *See Hudson*, 2015 WL 1780879 at * 1.  In *Hudson*, the plaintiff alleged, *inter alia*, that defendant Sallie Mae, Inc. ("Sallie Mae") violated the Fair Credit Reporting Act in connection with a loan which plaintiff asserted was obtained by another individual using the plaintiff's information.  *Id.*   Sallie Mae moved to compel arbitration, citing evidence that the plaintiff had co-signed a promissory note containing an arbitration agreement, in response to which the plaintiff filed a sworn affidavit in which he stated that he never co-signed the promissory note and further described how he disputed the debt from the moment he first learned about it.  *Id.*  The plaintiff in *Hudson* contended that any evidence submitted by Sallie Mae to the contrary was a result of identity theft.  *Id.*  Finding a genuine dispute of material fact, the court in *Hudson* denied Sallie Mae's motion to compel arbitration and ordered, in addition to necessary discovery, a trial on the issue of whether an arbitration agreement was formed.  *Id.* at * 3.

Here, as in *Hudson,*  (1) Plaintiff submitted a sworn affidavit denying that he (i) had an account with Lending Club and (ii) signed the Agreements; (2) Plaintiff disputed the Loan from the moment he learned of it;  and (3) the party moving to compel arbitration has cited evidence, by way of the Cline Declaration, that Plaintiff signed the Agreements and is therefore bound by the Arbitration Provision.  This dispute must be resolved before the Court can compel arbitration.

Therefore, a trial on the issue of whether an agreement to arbitrate was formed between Plaintiff and Lending Club is, in the Court's view, the appropriate next step here under the FAA.

15

Therefore, the Court respectfully recommends to Judge Seybert that Lending Club's motion to compel arbitration be DENIED and that the case proceed to a summary trial on the issue of the existence of a valid and binding arbitration agreement between Plaintiff and Lending Club.

If Judge Seybert concurs, the Court must then consider what discovery, if any, should proceed on the issue to be tried. According to the Court's most recent discovery scheduling order, discovery demands had to be served by February 9, 2019 and responses were due by March 29, 2019. On April 3, 2019, Plaintiff moved to compel responses from Lending Club, complaining that Lending Club had objected to Plaintiff's discovery demands and refused to provide any discovery on the grounds that Plaintiff's claims were subject to arbitration. *See* Plaintiff's Motion for Discovery [DE 48].[3] It appears to the Court that no meaningful discovery has been exchanged in this matter, including any discovery on whether a valid and binding arbitration agreement was formed. Therefore, the Court further respectfully recommends to Judge Seybert that the parties be ordered to meet and confer and to submit to the Court, within 14 days, a proposed discovery schedule for discovery restricted to the issue to be summarily tried.

**B.     Motion to Amend**

Plaintiff moved to amend the Initial Complaint on February 15, 2019, chiefly seeking to name the correct Equifax entity as a defendant and to assert a class claim against Lending Club. *See* Memorandum of Law in Support of Plaintiff's Motion to Amend [DE 38-1]. In light of the Court's recommendation that this matter proceed to a summary trial on the question of whether a valid and binding arbitration agreement exists between Plaintiff and Lending Club, the Court

---

[3] Because the content of DE 48 will be impacted by Judge Seybert's decision on this Report and Recommendation, the Court is deeming DE 48 MOOT at this juncture, without prejudice.

16

recommends to Judge Seybert that the motion to amend be DENIED at this time, without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that: (1) Lending Club's motion to compel arbitration be DENIED and that the case proceed to a summary trial on the issue outlined here; (2) the parties meet and confer and submit to the Court, within 14 days, a proposed limited discovery schedule; and (3) Plaintiff's motion to amend be DENIED at this time, without prejudice.

### VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See* FED. R. CIV. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

SO ORDERED.

Dated: Central Islip, New York
August 9, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

17